IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**LPF II, LLC,**

        **Plaintiff,**

**v.**

**CORNERSTONE SYSTEMS, INC.,**

        **Defendant.**

**Case No. 17-2417-DDC-JPO**

## MEMORANDUM AND ORDER

This matter comes before the court on defendant Cornerstone Systems, Inc.'s Motion to Dismiss or, in the Alternative, to Compel Arbitration or, in the Alternative, to Transfer (Doc. 6). Plaintiff LPF II, LLC has filed a response opposing the motion, and defendant has filed its Reply.

For reasons explained below, the court denies defendant's motion to compel arbitration based on the current record. Instead, the court concludes that a summary trial is necessary to determine whether the Carrier Agreement requires the parties to this lawsuit to arbitrate their current disputes with one another. Given that conclusion, the court denies without prejudice the portion of defendant's motion seeking dismissal or transfer.[1]

**I.**    **Background**

The facts recited here are taken from plaintiff's Complaint (Doc. 1-1) and the Carrier Agreement at issue in this lawsuit (Doc. 7-1). Although plaintiff does not attach the Carrier

---

[1] Defendant requests oral argument on its Motion to Dismiss. Doc. 6 at 1. D. Kan. Rule 7.2 provides that "[t]he court may set any motion for oral argument or hearing at the request of a party or on its own initiative." The discretion to conduct oral argument rests with the court. The court, in effect, grants defendant's request by ordering the summary trial required by this Order.

Agreement to its Complaint, the court may consider it because plaintiff references it in the Complaint. *See GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997) ("[I]f a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss."); *Black & Veatch Int'l Co. v. Wartsila NSD N. Am., Inc.*, No. CIV.A. 97-2556-GTV, 1998 WL 953966, at *2 (D. Kan. Dec. 17, 1998) (deciding a Rule 12(b)(6) motion to dismiss and compel arbitration where the Complaint referenced the contract containing the arbitration provision without converting motion to one seeking summary judgment).

### A. The Carrier Agreement

On March 18, 2014, defendant Cornerstone Systems, Inc. ("Cornerstone") entered into a Carrier Agreement with two nonparties—Rail Logistics, L.C. ("Rail Logistics") and Rail Logistics/Cold Train, L.C. f/k/a Cold Train, L.C. ("Cold Train"). Doc. 7-1; Doc. 1-1 at 3 ¶ 10. Cornerstone had served as a Registered Property Broker under the auspices of the Federal Motor Carrier Safety Administration. Doc. 7-1 at 1. Rail Logistics and Cold Train were the carriers. Rail Logistics and Cold Train each agreed to provide fleet management and other services to Cornerstone. And Cornerstone agreed to pay Rail Logistics and Cold Train for those services. Doc. 1-1 at 3 ¶ 8-10.

> The Carrier Agreement contains a "Disputes" provision. It provides:
>
> In the event of a dispute arising out of this Agreement, including but not limited to Federal or State statutory claims, BROKER shall sole right to determine Arbitration or Litigation. Arbitration proceedings shall be conducted under the rules of the Transportation Arbitration and Mediation PLLC (TAM), or Transportation ADR Council, Inc. (ADR), upon mutual agreement of the Parties, or if no agreement, then at BROKER's sole discretion. Arbitration or Litigations proceedings shall be started within eighteen (18) months from the date of delivery or scheduled date of delivery of the freight, whichever is later. Upon agreement of the Parties, arbitration proceedings may be conducted outside of the administrative control of

>the TAM or ADR. The decision of the arbitrators shall be binding and final and the award of the arbitrator may be entered as judgment in any court of competent jurisdiction. The rationale and reasoning of the decision of arbitrator(s) shall be fully explained in a written opinion. The prevailing party shall be entitled to recovery of costs, expenses and reasonable attorney fees as well as those incurred in any action for injunctive relief, or in the event further legal action is taken to enforce the award of arbitrators. Arbitration proceedings shall be conducted at the office of the TAM or ADR nearest Memphis, Tennessee or such other place including by teleconference, or video conference, as mutually agreed upon in writing or directed by the acting arbitration association. Provided, however, either Party may apply to a court of competent jurisdiction for injunctive relief. Unless preempted or controlled by federal transportation law and regulations, the laws of the State of Tennessee shall be controlling notwithstanding applicable conflicts of laws rules. The arbitration provisions of this paragraph shall not apply to enforcement of the award of arbitration.
>
>In the event of litigation the prevailing Party shall be entitled to recover costs, expenses and reasonable attorney fees, including but not limited to any incurred on appeals. Venue, controlling law, and jurisdiction in any legal proceedings shall be in Shelby County in the State of Tennessee not withstanding conflicts of laws and rules to the contrary.

Doc. 7-1 at 6.

### B.     Rail Logistics and Cold Train's Accounts Receivable

Some two years before defendant Cornerstone had entered into the Carrier Agreement with Rail Logistics and Cold Train, Rail Logistics and Cold Train had entered into a security agreement with Great Western Bank. This 2012 security agreement gave the bank a security interest in all assets owned by Rail Logistics and Cold Train. These secured assets included Rail Logistics and Cold Train's accounts receivable.

In January 2016, plaintiff LPF II, LLC ("LPF") and Great Western Bank agreed to settle a dispute they had with one another. In their settlement agreement, the bank assigned its interest in Rail Logistics and Cold Train's accounts receivable to plaintiff LPF.

### C.     Current Lawsuit

In short form, plaintiff LPF's Complaint in this case alleges that defendant Cornerstone owes Rail Logistics and Cold Train about $157,000 for fleet management services that they

provided defendant Cornerstone. Plaintiff LPF claims that it owns the right to collect on this account receivable because it owns a security interest in Rail Logistics and Cold Train's assets—including the $157,000 account receivable owed by defendant Cornerstone.

After defendant Cornerstone was sued in state court, it removed the case to our court claiming that federal subject matter jurisdiction existed because plaintiff and defendant were citizens of different states. *See* Doc. 1 (invoking 28 U.S.C. § 1332). Now that the court has resolved some uncertainty about the parties' citizenship,[2] the court turns to defendant's response to plaintiff's Complaint. This initial response asks the court to dismiss the case because the contractually adopted limitations period bars plaintiff from recovering. *See* Doc. 7 at 4. But this same motion also invokes the arbitration provision contained in the Carrier Agreement between Rail Logistics/Cold Train and defendant Cornerstone. *See* Doc. 7 at 5 (quoted in its entirety in part A, above). Specifically, Cornerstone's motion asserts the following: "Cornerstone, in its sole discretion pursuant to the Carrier Agreement, hereby elects arbitration, whereby plaintiff must submit its claims to binding arbitration, in accordance with Section 5(E) of the Carrier Agreement." *Id*. Given defendant's unequivocal election to invoke an arbitration agreement, the court must turn first to the arbitration aspect of defendant's motion. *See Conn. Gen. Life Ins. Co. v. CST Indus., Inc.*, No. CIV.A. 05-2029-KHV, 2005 WL 1398660, at *2 (D. Kan. June 14, 2005) ("Federal policy favors arbitration agreements and requires that the Court rigorously enforce them." (citing *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 226 (1987)) (other citations omitted)).

---

[2]     *See* Doc. 12, 14.

4

## II. Analysis

For the court to compel the parties to arbitrate disputes presented by the Complaint, the defendant, as the party seeking to compel arbitration, must establish that: (1) the Carrier Agreement applies to disputes between this plaintiff and this defendant; (2) the Carrier Agreement's arbitration clause encompasses the disputes at issue in the case; and (3) the Arbitration Clause is valid and enforceable. As explained in more detail below, the court cannot decide the first issue on the current record. The moving papers currently before the court present genuine issues of material fact whether the Carrier Agreement applies to plaintiff's claims against defendant. The court thus must hold a summary trial to resolve this issue. Consequently, the court declines to compel arbitration pending a summary trial, as described below, and denies without prejudice the motion's request for dismissal or transfer.

### A. Federal Arbitration Act

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, requires that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable . . . ." 9 U.S.C. § 2. Section 3 of the FAA permits the court to stay litigation in favor of arbitration. The United States Supreme Court has interpreted the FAA to establish a strong federal policy in favor of arbitration thus requiring "liberal reading of arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 23 n.27 (1983); *see also ARW Exploration Corp. v. Aguirre*, 45 F.3d 1455, 1462 (10th Cir. 1995) (finding, the FAA "evinces a strong federal policy in favor of arbitration" (citing *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987))).

When an agreement contains an arbitration clause, "a presumption of arbitrability arises

. . . ." *ARW Exploration Corp.*, 45 F.3d at 1462 (citing *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986)). But, "because 'arbitration is a matter of contract' and the authority of an arbitrator arises only from the parties' agreement to that forum in advance, 'a party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit.'" *Sanchez v. Nitro-Lift Techs., L.L.C.*, 762 F.3d 1139, 1146 (10th Cir. 2014) (quoting *AT & T Techs.*, 475 U.S. at 648–49); *see also Hicks v. Cadle Co.*, 355 F. App'x. 186, 192 (10th Cir. 2009) ("[T]he FAA's proarbitration policy does not operate without regard to the wishes of the contracting parties." (citations and internal quotation marks omitted)).

The presumption of arbitrability thus "falls away," when the parties dispute whether a valid and enforceable arbitration agreement exists. *See Riley Mfg. Co., Inc. v. Anchor Glass Container Corp.*, 157 F.3d 775, 779 (10th Cir. 1998) (citation omitted). To say it another way, a court may compel arbitration "only when satisfied that the making of the agreement [to arbitrate] is not at issue." *Nat'l Am. Ins. Co. v. SCOR Reinsurance Co.*, 362 F.3d 1288, 1290 (10th Cir. 2004) (citation and internal quotation marks omitted).

  **B. Does the Carrier Agreement's Arbitration Provision Apply to Plaintiff?**

The parties agree about some of the operative facts. For instance, they agree that defendant Cornerstone entered into the Carrier Agreement with non-parties Rail Logistics/Cold Train. They likewise agree that the Carrier Agreement contains an arbitration provision. And last, they agree that plaintiff LPF was not a party to the Carrier Agreement and its arbitration provision. But from there, they part company.

Defendant Cornerstone asserts that plaintiff, in June 2017, "step[ped] into the shoes of Rail Logistics-Cold Train, sued Cornerstone for amounts allegedly due and owing to Rail Logistics-Cold Train" and that this debt arose "exclusively from the Carrier Agreement." Doc. 7 at 2. In context, these allegations and others made by the Complaint and defendant's motion

imply that plaintiff—by stepping into shoes that permit plaintiff to sue on the debt allegedly owed to Rail Logistics/Cold Train—also stepped into their shoes as parties to the Carrier Agreement. *See* Doc. 7 at 2. Thus, defendant reasons, plaintiff must arbitrate its disputes with defendant Cornerstone because Rail Logistics and Cold Train were obligated to arbitrate. Plaintiff disagrees. It argues that conclusory assertions like the ones Cornerstone has made here cannot establish that a binding arbitration agreement exists between this plaintiff and this defendant.

Given the meager information supplied so far, the court agrees with plaintiff. The record presented by this motion does not permit the court to determine whether an arbitration agreement exists that encompasses these parties and the disputes at issue in their lawsuit. Subsections 1 and 2, following, explain the rationale for this conclusion.

### 1. Procedural Mechanism

When the parties dispute whether an arbitration agreement exists, the party moving to compel arbitration bears a burden like the one faced by a summary judgment movant—the proponent of arbitration must make an initial showing that a valid arbitration agreement exists. *Hancock v. Am. Tel. & Tel. Co., Inc.*, 701 F.3d 1248, 1261 (10th Cir. 2012); *SmartText Corp. v. Interland, Inc.*, 296 F. Supp. 2d 1257, 1262–63 (D. Kan. 2003) (citations omitted); *Phox v. Atriums Mgmt. Co., Inc.*, 230 F. Supp. 2d 1279, 1282 (D. Kan. 2002). If the moving party satisfies this requirement, the burden shifts to the non-moving party to demonstrate that there is a genuine issue of material of fact whether the parties have formed an agreement to arbitrate. *Hancock*, 701 F.3d at 1261; *SmartText Corp.*, 296 F. Supp. 2d at 1263; *Phox*, 230 F. Supp. 2d at 1282. If the non-moving party "demonstrates [such] a genuine issue of material fact, then a trial on this issue is required." *SmartText Corp.*, 296 F. Supp. 2d at 1263 (citing 9 U.S.C. § 4 (if the making of the arbitration agreement is seriously disputed, then "the court shall proceed

summarily to the trial thereof") (further citation omitted)); *see also Howard v. Ferrellgas Partners, L.P.*, 748 F.3d 975, 978 (10th Cir. 2014).

### 2. Substantive Legal Principles

To decide whether the parties agreed to arbitrate their current disputes, courts generally apply "'ordinary state-law principles that govern the formation of contracts.'" *Hardin v. First Cash Fin. Servs., Inc.*, 465 F.3d 470, 475 (10th Cir. 2006) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). Here, the analysis is more challenging. Plaintiff LPF was not a party to the contract that contains the arbitration agreement. The only information provided by defendant Cornerstone—the proponent of the arbitration motion—is that plaintiff "stepped into the shoes" of two companies who, it appears, were parties to an arbitration provision. The record for the current motion includes no other information about the content of the agreement that purportedly placed plaintiff in those shoes. It likewise omits any citation to legal authority supporting defendant's legal conclusion. Still, the gravamen of defendant's motion is clear enough. That is, plaintiff, by asserting rights arising under the Carrier Agreement, also inherits the Carrier Agreement's obligation to arbitrate claims arising from that agreement. And while Cornerstone's showing is not a textbook showing of arbitrability, the court concludes that defendant has discharged its burden to make "an initial showing that a valid arbitration agreement exists" between this plaintiff and this defendant.

But that showing does not conclude the discussion. Plaintiff's response to Cornerstone's motion reveals a dispute whether a valid and enforceable agreement exists between the parties to this lawsuit. This showing means that the presumption of arbitration arising under the Federal Arbitration Act "falls away." *Riley Mfg. Co.*, 157 F.3d at 779.

### C.     What Happens Now?

While the case law is not rich with guidance, precedent from our Circuit identifies the path forward.  The court should not deny defendant's motion to compel arbitration based on its inconclusive showing.  Instead, the court must proceed to a second phase of the analysis.  *Howard*, 748 F.3d at 978 (holding district court erred by denying arbitration outright when moving papers revealed dispute about arbitrability).  Specifically, *Howard* and the FAA instruct district courts to "proceed summarily to the trial" on the facts relevant to arbitrability.  *Id.* at 977 (citing 9 U.S.C. § 4).  Likewise, *Howard* makes clear, the court should get on with this "*summary trial*" quickly.  *Id.* at 978 (emphasis in original).  The court should not delay the summary trial, nor should it allow the parties to engage in "death by discovery" on this threshold question.  Indeed, *Howard* directs the court to sponsor an efficient and summary process "so the parties can get on with the merits of [litigating] their dispute in the right forum."  *Id.*  This is precisely what our court has done in the past, albeit before *Howard* provided such clear rules of the road.  *See SmartText Corp.*, 296 F. Supp. 2d at 1263.

Consistent with these directives, the court denies defendant's motion to compel arbitration pending a summary trial on the question of arbitrability.  Also, the court denies defendant's motion to dismiss, or alternatively, to transfer without prejudice to its right to reassert such a request for relief once the summary trial resolves the arbitration issue.

**IT IS THEREFORE ORDERED THAT** the court:  (a) denies the portion of defendant's "Motion to Dismiss or, in the Alternative to Compel Arbitration or, in the Alternative, to Transfer" (Doc. 6) pending a summary trial on the issue of arbitrability; and (b) denies the remainder of this motion without prejudice to defendant's right to reassert those requests for relief once the forum issue is decided.  The court will conduct a summary trial to decide the issue whether a valid arbitration agreement exists between this plaintiff and this

defendant that encompasses the disputes at issue in this case.  Consistent with this Order, counsel for the parties must confer with one another and contact Deputy Clerk Megan Garrett at (785) 338-5340 or megan_garrett@ksd.uscourts.gov within 10 days of the date of this Order to establish a prompt trial date for a summary trial.  Also, the parties must confer and advise Ms. Garrett whether either party demands a jury trial on this issue and, if so, whether they dispute the propriety of a jury trial on this limited issue.[3]

**IT IS SO ORDERED.**

**Dated this 21st day of February, 2018, at Topeka, Kansas.**

                                                  **s/ Daniel D. Crabtree**
                                                  **Daniel D. Crabtree**
                                                  **United States District Judge**

---

[3] The court recognizes that the parties may manage to stipulate to the dispositive facts and thus submit the issue for decision on stipulated facts.  The court does not understand *Howard* to forbid the court from resolving the threshold arbitrability question on stipulated facts.  Instead, the court understands it merely to describe the governing procedure when the parties disagree about the arbitrability facts.